COLUMBUS BAR ASSOCIATION *v.* HAYES.

[Cite as *Columbus Bar Assn. v. Hayes,* 118
Ohio St.3d 336, 2008-Ohio-2466.]

(No. 2007–2381—Submitted February 27, 2008—Decided May 29, 2008.)

## Per Curiam.

{¶ 1} Respondent, Michael J. Hayes of Columbus, Ohio, Attorney Registration No. 0069111, was admitted to the practice of law in Ohio in 1998. Respondent voluntarily ceased practicing on December 21, 2006, and is currently not registered with the Supreme Court of Ohio.

{¶ 2} Relator, Columbus Bar Association, charged respondent with numerous violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint and considered the joint stipulations of the parties. The panel found misconduct and recommended sanctions, all of which the board adopted. The board recommends that we suspend respondent's license to practice for two years with the last six months stayed upon satisfaction of certain conditions. The board also recommends that respondent serve a Gov.Bar R. V(9) period of probation for three years.

{¶ 3} On review, we agree that respondent committed professional misconduct as found by the board and further agree with the board's recommendations. The parties have not objected to the findings and recommendation of the board.

### Facts and Misconduct

#### Count I

{¶ 4} In 2006, Judge Beverly Pfeiffer of the Franklin County Court of Common Pleas appointed respondent to represent Lindsey Bruce in an appeal of a criminal conviction. The Bruce case was a matter of great public interest because respondent's client had been convicted of kidnapping and faced a ten-year prison sentence. The Court of Appeals for the Tenth District set the matter for oral argument and gave respondent sufficient notice of the date and time.

{¶ 5} Respondent did not appear at the appointed time, and the prosecuting attorney alone presented oral argument. Respondent did not communicate to anyone at the prosecutor's office that he would not be present and did not request a postponement of the hearing date. The court took the case under advisement without any argument on behalf of Bruce. Respondent appeared in the courtroom during the argument of another scheduled case and claimed that he was unable to drive because of a recent car accident and that his driver had been late. Respondent could not explain why he had not made any attempt to contact anyone at the court to say that he would be late.

{¶ 6} Respondent filed a motion for rehearing on behalf of Bruce. The appeals court denied the motion and affirmed Bruce's conviction. Respondent then failed to file an appeal to the Supreme Court of Ohio on behalf of his client.

{¶ 7} The parties stipulated that there is clear and convincing evidence that respondent's acts and failure to act violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law), 6–101(A)(1) (failure to associate with counsel competent to handle the legal matter that respondent is not competent to handle), and 6–101(A)(3) (neglecting an entrusted legal matter). The panel additionally found violations of DR 7–107(A)(1) (failing to seek the lawful objectives of the client) and 7–101(A)(3) (damaging the client during the professional relationship).

## Count II

{¶ 8} Jamison Rucker paid respondent $1,000 to represent him on a charge of driving with a suspended license. Respondent had represented Rucker in the original juvenile traffic matters that resulted in the suspension. Although the court had sent notice of the hearing to respondent, respondent did not see the notice and subsequently did not inform his client or his client's mother of the hearing. The court issued a warrant for Rucker's arrest when he did not appear for the hearing.

{¶ 9} Rucker's mother eventually obtained respondent's home number and called him there. Although respondent said he would move to have the warrant set aside, the warrant was withdrawn only when Rucker's mother persuaded the judge to withdraw it. Respondent has not returned any portion of the retainer he received to represent Rucker.

{¶ 10} Respondent stipulated that there is clear and convincing evidence that his acts and failure to act violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(1), 6–101(A)(3), 7–101(A)(1), 7–101(A)(3), and 9–102(B)(4) (failing to return client funds). In addition, the panel found a violation of DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## Count III

{¶ 11} Michael Grace retained respondent to restore his driving privileges after a probation violation. Grace paid respondent $400 of the quoted $750 attorney fees. Respondent addressed a probation issue but did not pursue restoration of Grace's driving privileges.

{¶ 12} Grace received a summons and a felony indictment by mail and tried unsuccessfully to contact respondent. Believing that respondent had also received a copy of the summons, Grace appeared for the arraignment expecting to

see his attorney. Respondent did not appear at the court, and Grace left, afraid to be unrepresented there. The court issued a warrant for Grace's arrest. Respondent called Grace that evening to inquire about the arraignment and told Grace that he did not attend because he "had something else to do."

{¶ 13} Respondent demanded a new retainer on the felony case of $1,200 but missed several appointments with Grace to pick up payment of the new retainer. He eventually went to Grace's house to accept $500 in cash but provided no receipt. Respondent then failed to take care of the warrant as promised.

{¶ 14} At their next meeting, respondent demanded further payment from Grace. Grace's mother instructed respondent that they would not pay him any further fees because he had not delivered what he had promised. Respondent became belligerent, directing various obscenities at Grace's mother. On September 6, 2006, Grace terminated respondent's representation. Respondent has failed to return any of the $900 in attorney fees paid by Grace.

{¶ 15} Respondent stipulated that his acts and failure to act violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), and 9–102(B)(4). In addition, the panel found a violation of DR 1–102(A)(4).

*Count IV*

{¶ 16} Amanda Thompson paid respondent $10,000 to represent her in a case involving felony criminal charges. The court initially scheduled her case for a May 2006 trial but continued the date to July 17, 2006.

{¶ 17} Thompson's mother expressed concern about respondent's representation after hearing about respondent's failure to appear in the Bruce matter (Count I). Between May and July, Thompson and her family were able to communicate with respondent twice in the first week and never thereafter. On July 13, 2006, Amanda wrote a letter to the trial judge detailing the difficulties she had been having communicating with her attorney and requested a continuance. Thompson's family discussed the case with the prosecutor and discovered that respondent had failed to make Thompson aware of a plea offer.

{¶ 18} On Thompson's trial date, respondent arrived late and asked for another continuance, claiming lack of preparation because he had only recently received some of the discovery. Thompson then discharged the respondent and asked for additional time to find new counsel. Respondent told the judge that he would refund a portion of his retainer. He has not done so. Respondent did not earn a substantial part of the fee and failed to obtain a beneficial result for his client by means that were available.

{¶ 19} Respondent stipulated and the panel found that his acts and failure to act violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(1), 6–101(A)(2) (handling a

legal matter without preparation adequate in the circumstances), 6–101(A)(3), 7–101(A)(1), and 9–102(B)(4).

## Count V

{¶ 20} At the panel hearing, relator agreed to dismiss Count V.

## Count VI

{¶ 21} Respondent acknowledged that he has been addicted to and has used illegal and controlled substances and that these addictions have impaired his ability to practice law. Respondent became addicted to Percocet and Vicodin in 2005. Respondent became addicted to Suboxone after being prescribed the drug for relief for withdrawal symptoms and began to obtain it illegally as his drug of choice. Respondent also used crack cocaine. Respondent continued to represent clients and accept court appointments in serious criminal cases throughout his period of illegal drug use. In the summer of 2006, respondent failed to call clients, take care of their cases, send notices of hearings, and appear at scheduled hearings. Respondent admits that he neglected his law practice as a direct and proximate result of both his drug addiction and underlying psychological disorders.

{¶ 22} Respondent recently entered an intensive outpatient regimen of substance-abuse treatment at the Ohio State University's Talbot Hall and signed a contract with the Ohio Lawyers Assistance Program ("OLAP"). Respondent also received inpatient treatment for 30 days at Glenbeigh Hospital.

{¶ 23} Relator began sending respondent notices and requests for responses concerning these grievances in May 2006. Respondent received the notices but intentionally did not respond to them. Respondent made no significant response to the grievances against him until subpoenaed by relator.

{¶ 24} Respondent stipulated that his acts and failure to act violated DR 1–102(A)(6) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation). The board adopted the panel's findings on all counts.

## Aggravating and Mitigating Factors

{¶ 25} The board also adopted the aggravating and mitigating factors stipulated by the parties. See Section 10 of the Rules and Regulations Governing Procedures on Complaints and Hearing Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg"). Relator and respondent stipulated that a dishonest or selfish motive, a pattern of misconduct, multiple offenses, harm to vulnerable victims, and failure to make restitution are aggravating factors. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (h), and (i). They stipulated that the absence of a disciplinary record, full and free disclosure, a cooperative

attitude, and a chemical dependency successfully treated are mitigating factors. BCGD Proc.Reg. 10(B)(2)(a), (d), and (g).

## Sanction

{¶ 26} Relator and respondent jointly recommended a two-year suspension, with 12 months stayed based on certain conditions, including adherence to the contract with OLAP and a three-year monitored probation upon reinstatement. The panel and board adopted the recommendation, but with only the last six months stayed.

{¶ 27} We adopt all the board's findings of misconduct. In addition, based on the stipulated facts, we also conclude that respondent violated DR 1–102(A)(4) with respect to Count IV. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 28} In recommending a sanction, the panel and board relied on *Disciplinary Counsel v. Friedman,* 114 Ohio St.3d 1, 2007-Ohio-2477, 866 N.E.2d 1076. In *Friedman,* the respondent had committed eight counts of neglecting legal matters and retaining fees for services that he either never performed or did not fully perform. The case involved a pattern of misconduct and multiple offenses, and the respondent had not made full restitution. We ordered a two-year suspension with six months stayed based on certain conditions in that case. We found mitigating factors involving the diagnosis and treatment of a chemical dependency, full cooperation with disciplinary proceedings, good character and reputation, and no prior disciplinary record. The lawyer in that case had completed a treatment program, and the board had accepted evidence that he could return to the practice of law if he remained committed to daily efforts to remain sober.

{¶ 29} Like Friedman, respondent here has displayed a pattern of misconduct and has engaged in multiple offenses. To determine the appropriate sanction, however, we must also weigh the aggravating and mitigating factors of the situation.

{¶ 30} The mitigation that factored into our disposition in *Friedman* included the lawyer's cooperation in the disciplinary process. See BCGD Proc.Reg. 10(B)(2)(c) and (d). Moreover, the parties had stipulated to the absence of a disciplinary record, the respondent's cooperative attitude, and the chemical dependency. Weighing against these factors here, however, are the stipulated aggravating factors involving a dishonest or selfish motive, the pattern of misconduct, the multiple offenses, harm to vulnerable victims, and the failure to make restitution to this point.

{¶ 31} Respondent's hearing focused on the mitigating factors relating to his treatment and fitness to once again practice law. Respondent presented a

licensed independent social worker/certified chemical-dependency counselor from OLAP to discuss with the panel his recovery efforts. The counselor testified that respondent's chemical dependency contributed to the misconduct. The OLAP counselor confirmed that respondent had been following all of the recommended treatments and was complying with the rehabilitation program. The counselor also discussed the nature of respondent's attention-deficit hyperactivity disorder, dysthymia, and anxiety disorder. She stated that all the conditions are treatable and that as long as respondent continues to follow his treatment, he should return to an improved version of his old self and be able to return to his occupation.

{¶ 32} Having considered the duties that respondent violated, the aggravating and mitigating factors, and precedent, we adopt the sanction recommended by the board. Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years, with the last six months stayed on conditions. During the suspension, respondent shall (1) continue to comply with the terms of his OLAP contract, (2) provide a current report from a psychologist or psychiatrist certifying that he is fit to resume the practice of law in Ohio, (3) pay full restitution of all fees and expenses paid by or on behalf of the clients who have filed grievances against him with the Columbus Bar Association or with the Client Security Fund, (4) pay the costs of these proceedings, and (5) commit no further disciplinary violations. If respondent violates the terms of the stay, the stay shall be lifted, and respondent shall be suspended for the full two years.

{¶ 33} As pointed out by the OLAP counselor, recovery is dependent upon a strict observation of the recovery program. Therefore, we also adopt the board recommendation that if respondent is reinstated, he shall serve a Gov.Bar R. V(9) period of probation for three years from the date of reinstatement. During the probation, respondent shall (1) successfully complete his OLAP contract, (2) continue to be evaluated by a mental-health professional and follow any recommended course of treatment, (3) submit annually to relator a report from a psychologist or psychiatrist certifying that he is fit to continue the practice of law in Ohio, (4) cooperate with and accept monitoring by a law-practice monitor appointed by and reporting to relator, and (5) commit no further disciplinary violations.

{¶ 34} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Terry K. Sherman, A. Alysha Clous, and Bruce A. Campbell, for relator.

Jeffery A. Berndt, for respondent.